[No. 2441.]

## J. S. CLARK v. THE STATE.

THEFT—EVIDENCE—FACT CASE.—See the opinion *in extenso* and the statement of the case for evidence *held* insufficient to support a conviction for horse theft, because the defendant's explanation of his possession of the stolen animal being reasonable, natural and probable, the State relying solely upon such possession, rebutted the presumption of guilt and devolved upon the State the burden of proving the falsity of the explanation, which, the State failing to do, entitled the defendant to an acquittal.

APPEAL from the District Court of Erath. Tried below before the Hon. T. L. Nugent.

The conviction in this case was for the theft of a horse, the property of J. A. Fry and Ira Millican, in Erath county, Texas, on the first day of April, 1884. A term of five years in the penitentiary was the penalty assessed against the appellant.

Ira Millican was the first witness for the State. He testified, in substance, that he lived in Erath county, Texas, where he and J. A. Fry were engaged in the stock business and owned in

partnership a number of horses. Among those horses was a roan animal, about fourteen hands high, five or six years old, branded G on the left hip. That horse was turned out on the range in the fall of 1883. The horse's range was on Hackberry creek, Erath county, about three miles distant from the defendant's residence. The witness saw no more of that horse until May, 1884, when he was brought back from Johnson county by Buck Payne. On Payne's return with the horse he and witness, leaving the horse at home, went to the defendant's house to see him. They found the defendant in his field. The witness spoke to defendant about the horse and asked him who he got that horse from. He replied that he got the horse from a man named Haynes in a trade; that he traded for the horse on the range and got him up himself. The witness asked defendant where the man Haynes lived and he replied that he lived on Armstrong creek. Witness asked him if he referred to George Haynes, who lived on Armstrong creek. Defendant replied: "No, the Haynes I got the horse from lives further over and towards the head of Armstrong. I don't know his given name." Defendant said that he gave Haynes a mare and colt for the horse, and that he took the horse to Cleburne, Johnson county, and sold him. He said that he traded with Haynes about April 1, 1884, which was about the time the horse disappeared from the range. George Haynes was the only Haynes the witness had ever heard of as living on Armstrong creek. If defendant took the horse described in the indictment he did so without the witness's consent. J. A. Fry testified that the horse was taken without his consent.

J. M. Lemmons testified, for the State, that he met the defendant in Johnson county, Texas, early in April, 1884. Defendant was then riding such a horse as that described by the witness Millican. He claimed the horse openly as his own, and said that he got it in a trade with one Haynes, in Erath county, and that he gave Haynes a mare and colt for it about the first of that month. Defendant was then working for Mr. Tubbs.

George Tubbs testified, for the State, that he was related to the defendant by marriage. Defendant came to witness's father's house, in Johnson county, in April, 1884, riding such a horse as that described by the witness Millican. He went to work for witness's father. One morning, when witness and defendant started to leave the house on their horses, defendant's horse took what the witness called "the stops." Witness asked defendant

how long his horse had had that habit. Defendant replied that he had owned the horse two years, and that he was as much of a fool when he got him as then. On his cross examination, this witness said that the defendant lived with and worked for witness's father about a month, during which time he rode the horse openly and claimed him openly. Defendant spoke laughingly when he said that he had owned the horse two years.

George Haynes testified, for the State, that he had lived at the head of Armstrong creek, in Erath county, for several years. He knew the people of that section well, and had never known another Haynes than himself to live on that creek. He had never sold a horse to the defendant. The State closed.

A. A. Clark, the defendant's brother, testified that he lived near the defendant in April, 1884, when the defendant owned a bay mare and her two year old filly, and a paint horse. About April 1, 1884, a man who called himself Haynes came to witness's house inquiring for a roan horse branded G on the left shoulder or hip. Defendant's mare or filly were then running on the range, but the witness had never seen them since. He did not know what became of them, only by what the defendant told him. On his cross examination, the witness testified that the defendant did not own a colt in April, 1884. The man referred to, Haynes, was a stranger to witness. He said he lived in Mason county. He was a medium sized man, weighing about one hundred and forty pounds. He wore a light moustache and beard, and had a light complexion. He was then riding a sorrel horse, and traveling north. Witness had never seen him before nor since. Re-examined, the witness said that the defendant's filly was the offspring of his mare, and was spoken of as the mare's colt. A two year old filly is commonly called a colt.

N. Robbins testified, for the defense, that a mare and two year old filly claimed by, and reputed to be the property of the defendant, ran on the range early in the year 1884.

James Brown testified, for the defense, that he lived in Comanche county, Texas. On or about April 1, 1884, witness was at defendant's house in Erath county, Texas. While there a man who called himself Haynes, and claimed to live in Mason county, came to defendant's house, riding a sorrel horse, and asking about a roan horse branded G on the left hip. Defendant told Haynes that he knew such a horse on the range. A night or two afterwards, the man Haynes, riding the same sorrel horse, and leading a bay mare and a two year old filly.

stopped at witness's house. Haynes told witness how he got the mare and filly.

The motion for new trial raised the question discussed in the opinion.

No brief for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE. Possession of the alleged stolen horse, recently after the theft thereof, is the only inculpatory circumstance of defendant's guilt of the theft, of any substantial weight. This circumstance he explained before even being called upon to do so, and on more than one occasion. His explanation of his possession of the horse was that he had got it from a man named Haynes, and had traded Haynes a mare and colt for it. While the defendant did not prove by direct evidence the truth of this explanation of his possession of the horse, he proved it circumstantially, and almost conclusively, if his witnesses testified truly.

There is no evidence in the case which disproves the truth of such explanation. He told one witness, in a casual conversation, that he had owned the horse two years, but this statement was made by him in a jocular manner, and in relation to the foolish disposition of the horse. Considering the circumstances under which this statement was made, and the manner in which it was made, and also viewing it in connection with his more deliberate and detailed accounts of when, where and how he acquired possession of the horse, we think such statement entitled to but little, if any, consideration as evidence disproving the truth of his explanation. He said he got the horse from a man named Haynes, who lived on Armstrong creek in Erath county. It was proved circumstantially by the State that but one man of that name lived on said creek, and this man was produced as a witness, and testified that the defendant did not get the horse from him. But defendant, when first called upon by the owner of the horse to tell who he got him from, said he got him from a man named Haynes, but not from the Haynes who afterwards testified in the case. He never at any time claimed that the witness Haynes was the man from whom he got the horse, but, on the contrary, stated that it was another Haynes, whose christian name he did not know. He proved

that a man named Haynes had, about the time he claimed to have traded for the horse, been in his neighborhood inquiring for and claiming the horse in question, and that about said time defendant owned a mare and colt, and that said mare and colt were not seen in his possession, or in their accustomed range after the time he claimed to have traded them to Haynes for the horse.

While defendant had the horse he used him openly, claimed him as his own, and at no time and in no manner concealed or attempted to conceal such possession and claim, or to account for the same in any other way than that he had acquired the animal from Haynes, by swapping therefor a mare and colt. That the man Haynes from whom he claimed to have got the horse did not live on Armstrong creek, while tending to prove the falsity of defendant's explanation, perhaps, is certainly of small weight when we consider that, if defendant's explanation is true, Haynes must have been the person who stole the horse, and, being guilty of the theft, it is not likely that he would have told the defendant or any one else the truth as to his residence. On the contrary he would have sought to mislead the defendant and others not only as to his residence but as to his name. In fact one witness testified that this man who called himself Haynes told him that he lived in Mason county.

We are of the opinion that the defendant's explanation of the possession of the horse is a reasonable, natural and probable one, and rebutted and destroyed the inculpatory force of the circumstance of his possession of the stolen horse, and it devolved upon the State to show the falsity of such explanation, otherwise the defendant should have been acquitted. (Garcia v. The State, 26 Texas, 209; Johnson v. The State, 12 Texas Ct. App., 385; Irvine v. The State, 13 Texas Ct. App., 499; Sitterlee v. The State, Id., 587; Loving v. The State, 18 Texas Ct. App., 459; Windham v. The State, 19 Texas Ct. App., 413.) And we are further of the opinion that the evidence does not show the falsity of the defendant's said explanation, and that therefore the conviction is unsupported by the evidence, wherefore the judgment is reversed and the cause is remanded.

*Reversed and remanded.*